UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: JPMORGAN CHASE & CO. ) <br> SHAREHOLDER DERIVATIVE ) <br> LITIGATION ) <br> ) <br> This Document Relates To: ) <br> ) <br> ) <br> ALL ACTIONS ) <br> ) <br> ) | Master File No. 08 Civ. 974 (DLC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISQUALIFY ROBERT L. GARBER AS PLAINTIFF AND
DISMISS THIS DERIVATIVE ACTION**

Sharon L. Nelles (SN-3144)
Gerald L. Black, Jr. (GB-7998)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Defendants*

August 15, 2008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

Background ....................................................................................................................................2

ARGUMENT ..................................................................................................................................9

    A.    Garber Has Not Shown the Requisite Intent or Desire To Prosecute Vigorously the Underlying Corporate Claim. .............................................10

        1.    Yates and Counsel Control This Litigation — Not Garber. ..........10

        2.    Garber Is Neither Familiar With This Litigation Nor Personally Committed to It. .............................................................12

    B.    Garber Has Not Chosen Competent Counsel To Wage This Litigation. .....................................................................................................13

CONCLUSION ............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cohen* v. *Bloch*,
  507 F. Supp. 321 (S.D.N.Y. 1980)...............................................................................9

*Davis* v. *Comed*,
  619 F.2d 588 (6th Cir. 1980) ....................................................................................10

*In re Fuqua Indus. S'holder Litig.*,
  752 A.2d 126 (Del. Ch. 1999).......................................................................10, 11, 12

*Kamen* v. *Kemper Fin. Servs., Inc.*,
  908 F.2d 1338 (7th Cir. 1990) ..................................................................................13

*Renz* v. *Carota*,
  No. 87-CV-487, 1991 WL 165677 (N.D.N.Y. 1991).................................................10

*Rogosin* v. *Steadman*,
  71 F.R.D. 514 (S.D.N.Y. 1976) .........................................................................9, 10, 11

*Rothenberg* v. *Security Mgmt. Co., Inc.*,
  667 F.2d 958 (11th Cir. 1982) ......................................................................10, 11, 12

*Spira* v. *Nick*,
  No. 94 Civ. 7066, 1997 WL 793052 (S.D.N.Y. 1997) ..............................................13

*Sweet* v. *Bermingham*,
  65 F.R.D. 551 (S.D.N.Y. 1975) .................................................................................1, 9

*Zamer* v. *Diliddo*,
  No. 97-CV-32S, 1999 WL 606731 (W.D.N.Y. 1999).......................................9, 10, 13

**STATUTES**

Fed. R. Civ. P. 23.1..........................................................................................................2, 9

Pursuant to this Court's Order of July 9, 2008, individual defendants and nominal defendant JPMorgan Chase & Co. ("JPMorgan Chase") respectfully move to dismiss the sole remaining action in these consolidated cases on the ground that plaintiff Robert L. Garber has not shown that he can fairly and adequately represent the interest of the shareholders of JPMorgan Chase, and thus, this derivative action may not be maintained under Rule 23.1 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

A plaintiff brings a derivative lawsuit on behalf of a corporation and is charged with protecting the interests of that corporation. In other words, plaintiff is entrusted with the corporation's care. A plaintiff may not maintain a derivative action if it appears he does not fairly and adequately represent the interest of the corporation's shareholders. To meet this fairness and adequacy standard, a plaintiff must both be willing and able to prosecute vigorously the corporation's claims and engage competent counsel to assist him. *Sweet* v. *Bermingham*, 65 F.R.D. 551, 554 (S.D.N.Y. 1975). Garber fails the test.

Quite simply, Garber has no genuine engagement with this lawsuit. He was not meaningfully involved in its initiation and he has not been meaningfully involved in its prosecution. Rather, the lawsuit was initiated by his friend, Alfred Yates, a Pittsburgh attorney who watches Garber's stock holdings for litigation opportunities. Indeed, it was Yates who selected counsel for this case, and it is Yates to whom counsel has directly reported. Yates is acting as both shadow plaintiff and shadow counsel and it is entirely inappropriate. Garber is quite literally a "named plaintiff" in name only, and

this is not fair and adequate representation of shareholder interests as contemplated by Rule 23.1.

**Background**

On January 30, 2008, two identical shareholder derivative complaints were filed against officers and directors of JPMorgan Chase in the United States District Court for the Southern District of New York asserting a garden variety of claims related to the subprime mortgage crisis. The first was filed by Lasky & Rifkind, Ltd. ("Lasky & Rifkind") and Robbins Umeda & Fink, LLP ("Robbins Umeda") as counsel on behalf of plaintiff James Shroff. (Verified Shareholder Derivative Complaint of James R. Shroff at 57.)[1] The second was filed minutes later by Lasky & Rifkind only, as counsel on behalf of plaintiff Robert Garber. (Verified Shareholder Derivative Complaint of Robert L. Garber at 57.)

The next day, January 31, two more identical complaints were filed, these in the Supreme Court of the State of New York, New York County. The first was filed by Murray, Frank & Sailer LLP ("Murray Frank") as counsel on behalf of plaintiff Doris Staehr, and the second was filed by Murray Frank and Provost Umphrey Law Firm LLP (a law firm located in Dallas, Texas) as counsel on behalf of plaintiff Richard Carrigan. (Garber Deposition Transcript ("Garber Tr.") Exs. 12 & 13 (state complaints).) The sole

---

[1] Rule 23.1(b) requires that a "complaint must be verified." Fed. R. Civ. P. 23.1(b). The "verified" complaint filed on behalf of Shroff was not verified by Shroff, but by Gregory E. Del Gaizo, an attorney at Robbins Umeda. Shroff "verified" his complaint on February 12, two weeks after the complaint was filed, but that verification was never filed with the Court. (Shroff Deposition Transcript ("Shroff Tr.") 85:22-86:7; 86:11-17.)

difference between the state complaints and the federal complaints is that the state complaints do not allege violations of the Securities Exchange Act of 1934.[2]

On April 22, the parties moved the Court to consolidate the federal complaints. (April 22, 2008 Stipulation Consolidating Action, Appointing Lead Counsel and Liaison Counsel and Related Matters at 2-3.) Robbins Umeda, counsel to Shroff, also sought appointment as lead counsel for the consolidated cases. (*Id.* at 3-4.) "This application was not supported by submissions regarding the qualifications of Robbins Umeda to act as Lead Counsel." (June 9, 2008 Order at 1.) On May 7, the Court held a pretrial conference during which it became apparent that counsel from Robbins Umeda had little knowledge about his plaintiff: He had not met with Shroff; he did not know where Shroff worked; and he did not know when Shroff purchased his JPMorgan Chase shares. (July 9 Tr. at 2:25-3:12.) On May 8, the Court consolidated the actions (May 8, 2008 Consolidation Order at 2), but ordered Robbins Umeda to submit additional materials in support of its application for appointment as lead counsel by May 16. (May 8, 2008 Scheduling Order at 1.)

When May 16 came, Robbins Umeda submitted a declaration on its own behalf, but requested an extension of time to procure a declaration from Shroff. (May 16, 2008 Letter from George C. Aguilar, Esq. to the Honorable Denise L. Cote at 1.) Then, on May 23, Robbins Umeda informed the Court that Shroff no longer wished to

---

[2] The relationship between the four complaints filed in these actions and the law firms that filed them is, at best, unclear. Despite a request for explanation from the Court, to date, all that has been established is that the initial complaint was created on a word processor at Robbins Umeda and then shared with other counsel. (Transcript of July 9, 2008 Hearing ("July 9 Tr.") at 14:14-19, 19:7-10.)

participate in the litigation at all (May 23, 2008 Letter from Jeffrey P. Fink, Esq. to the Honorable Denise L. Cote at 1), and filed a notice of appearance on behalf of Garber, who at this time was represented by Lasky & Rifkind.[3] (May 23, 2008 Notice of Appearance of Robbins Umeda & Fink, LLP on behalf of Robert Garber.)  Garber submitted a declaration in support of Robbins Umeda's application for appointment as lead counsel at the same time, which said nothing more than that Garber had retained Robbins Umeda in three previous actions and had been "satisfied" with his representation.  (May 22, 2008 Declaration of Robert Garber in Support of Application for Lead Counsel by Robbins Umeda & Fink, LLP at 1; *see also* July 9 Tr. at 4:1-8.)  "[Garber] did not otherwise identify himself or further address whether he could fairly and adequately represent the interest of the corporation and its shareholders." (July 9 Tr. at 4:10-13.)

On June 9, the Court ordered defendants to depose Garber regarding (i) his qualifications to maintain this action under Rule 23.1; (ii) the history of his involvement in this litigation; and (iii) the history of his relationship with Robbins Umeda.  (June 9, 2008 Order at 3.)  The deposition took place on June 26 and revealed the following:  (i) Garber is a professional plaintiff who does not interact directly with his counsel of record, but rather communicates with them through a "conduit;" (ii) Garber did not initiate this litigation and is unfamiliar with the details of his complaint and other

---

[3]  On July 16, the Court granted Shroff's motion to dismiss his complaint.  (July 16, 2008 Order Granting Voluntary Dismissal Without Prejudice Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).)

documents drafted and filed on his behalf; and (iii) Garber is not kept apprised of and is unfamiliar with key events that have occurred in the course of the litigation.[4]

Specifically, Garber testified that he has acted as plaintiff in some twenty-five lawsuits against financial institutions and other companies. (Garber Tr. 72:9-15.) Garber is generally unfamiliar with the facts and circumstances of any of these litigations and spends little time, if any, managing them. (Garber Tr. 60:20-67:2.) Indeed, for virtually every one of the actions in which he has been a plaintiff, Garber admitted that he cannot identify (i) his counsel; (ii) the location of the action; or (iii) the nature of the action. (*Id.*) This is not surprising — Garber's involvement in many of these litigations, including this one, has been instigated by his friend and sometime colleague, Alfred Yates, who acts as a "conduit" between Garber and his counsel of record and periodically updates Garber on his many litigations. (Garber Tr. 9:13-10:6; 10:14-12:8; 62:13-15; 69:8-21; 122:10-123:15.) Yates, who "has the right to access" Garber's investments online (Garber Tr. 57:11-13; 59:14-20; 105:5-8), also watches Garber's stock portfolio to make certain that the stocks of the companies he has sued are not sold so that Garber does not lose his standing as a plaintiff. (Garber Tr. 59:14-20.)

In this case, it was Yates who made Garber "aware" that he held stock in JPMorgan Chase. (Garber Tr. 105:9-18.) It was Yates who suggested to Garber that

---

[4] In its June 9 Order, the Court also permitted the defendants to depose Shroff regarding (i) the history of his involvement in this litigation and (ii) his prior relationship with Robbins Umeda. (June 9, 2008 Order at 3.) That deposition revealed that Shroff is an 81 year old man who (i) does not understand the nature of a derivative lawsuit (Shroff Tr. 95:18-23; 109:1-3); (ii) was never informed that Lasky & Rifkind would be involved as counsel in his lawsuit (Shroff Tr. 33:22-34:9); and (iii) was not informed of any developments in the litigation occurring between January and May of 2008. (Shroff Tr. 34:23-35:2.)

there were issues regarding JPMorgan Chase's disclosures. (Garber Tr. 9:13-10:2.) And it was Yates, not Garber, who conferred with Lasky & Rifkind concerning potential litigation against JPMorgan Chase.[5] (Garber Tr. 29:18-30:9.)

       Moreover, not only was this litigation not Garber's idea, but Garber did not conduct any investigation into the allegations contained in his complaint. (Garber Tr. 10:14-22.) Garber does not know whether any investigation was conducted by his attorneys. (Garber Tr. 10:14-22.) Garber does not know who drafted his complaint. (Garber Tr. 35:16-36:21.) Garber does not know who drafted his declaration in support of Robbins Umeda's application for appointment as lead counsel and did not assist in its preparation. (Garber Tr. 100:9-21.) Garber did not discuss his declaration with any of his counsel; he discussed it only with Yates. (Garber Tr. 99:15-100:21.)

       Indeed, Garber has thoroughly delegated to Yates the responsibility for conferring and interacting with counsel in this matter. (*See, e.g.,* Garber Tr. 29:5-30:9; 88:22-89:3; 90:14-18; 93:12-18; 120:12-121:13.) Thus, perhaps not surprisingly, he has paid no attention to defining events in this action. At the time he filed his complaint, Garber had no knowledge that a separate but identical derivative complaint on behalf of JPMorgan Chase was also being filed by his counsel of record and Robbins Umeda with Shroff as named plaintiff on the very same day. (Garber Tr. 39:18-40:25.) Garber also did not know of the Court's concerns regarding Robbins Umeda's lack of contact with

---

[5]    Despite this, Garber has refused to disclose to the Court, defendants or the shareholders whose interests he purports to represent Yates' role in this litigation. (Garber Tr. 100:22-102:13; 108:15-23; 109:9-13; 119:9-19.) Is Yates being paid by counsel of record? Is there some other arrangement? Does Garber even know? (Garber Tr. 57:17-58:15.)

Shroff or the insufficiency of Robbins Umeda's application for appointment as lead counsel for the consolidated cases. (Garber Tr. 92:17-22; 107:25-108:14; 108:24-109:8.) In fact, Garber never discussed the matter of Shroff's potential exit from the litigation and its implications for Garber himself or the consolidated cases with either Lasky & Rifkind or Robbins Umeda. (Garber Tr. 93:6-18.) He likewise never discussed Robbins Umeda appearing for him with either Lasky & Rifkind or Robbins Umeda. (Garber Tr. 97:25-99:24.) Garber never even met with anyone from either Lasky & Rifkind or Robbins Umeda regarding this litigation until June 25, 2008, the day before his Court-ordered deposition.[6] (Garber Tr. 48:9-16.) In short, Garber has not taken a single independent action to fulfill his duties as plaintiff in this litigation, but rather, in his own words, is content "adhering to, absorbing, [and] following" others. (Garber Tr. 97:3-9.)

On July 9, this Court held a hearing to address issues of adequacy regarding Garber and his counsel. The Court noted that, despite "[its] best efforts at a conference and through a scheduling order to get some information that would permit [it] to rule on these issues," Robbins Umeda failed to sufficiently support its application for appointment as lead counsel and Garber failed to address whether he could fairly and adequately represent the interests of the shareholders, and set a date of July 18 for defendants to move for an order regarding Garber's adequacy to maintain this derivative litigation. (July 9 Tr. at 4:14-16.) Less than a week later, Robbins Umeda notified the Court of their intent to withdraw their application for appointment as lead counsel

---

[6] Garber never entered into any retention agreement with Lasky & Rifkind and did not sign a retention agreement with Robbins Umeda until the day of his deposition. (Garber Tr. 48:17-49:10.)

because it had caused "unfortunate distractions in the litigation." (July 15, 2008 Letter from George C. Aguilar, Esq. to the Honorable Denise L. Cote at 1-2.)

On August 6, another law firm, Whatley Drake & Kallas, LLC ("Whatley Drake"), filed notices of appearance on behalf of Garber. (August 6, 2008 Notices of Appearance of Joe R. Whatley, Jr. and Deborah Clark-Weintraub.) Whatley Drake submitted a declaration purporting to outline its adequacy to serve as counsel in this case that does no more than provide the firm's resume. (Declaration of Joe R. Whatley, Jr. Regarding the Adequacy of Whatley, Drake & Kallas, LLC to Serve as Counsel for Plaintiff Robert L. Garber.) The declaration does not detail how Garber selected Whatley Drake nor does it address whether counsel from Whatley Drake has met with Garber regarding his lawsuit, and Garber has not submitted a supporting declaration with this information.

On August 7, Robbins Umeda and Lasky & Rifkind filed motions to withdraw from this matter altogether. (August 7, 2008 Motion of Robbins Umeda & Fink, LLP to Withdraw As Counsel of Record; August 7, 2008 Motion of Lasky & Rifkind, Ltd. to Withdraw Appearance As Attorney of Record for Robert Garber.) The Court granted these motions on August 8.

Thus, as of the date of this motion, the status of this derivative litigation is as follows: The first filed of the two consolidated cases has been dismissed at the request of plaintiff — an 81 year old man who never understood the nature of the action and wanted no part of it once called upon to act — leaving a consolidated case of one led by a plaintiff who has abdicated his supervisory responsibilities. Counsel of record in both cases (including the firm that drafted the complaint filed four separate times) have

-8-

withdrawn in the face of scrutiny. New counsel have appeared, but have not even attempted to address how Garber can sustain any appearance of fairness and adequacy in light of what has transpired to date. He cannot.

## ARGUMENT

The purpose of a derivative lawsuit is to allow a shareholder to protect the rights and interests of a corporation. *Sweet* v. *Bermingham*, 65 F.R.D. 551, 553 (S.D.N.Y. 1975). A plaintiff-shareholder in such an action is entrusted with responsibility for the care of the corporation, and should both believe in the merits of the lawsuit and take affirmative steps to prosecute vigorously the claims on the corporation's behalf. *Id.* at 553-54.

Rule 23.1 provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders . . . in enforcing the right of the corporation." Fed. R. Civ. P. 23.1(a). The inquiry into the adequacy of a plaintiff in a derivative action "is broad and can extend to whatever factors are needed to assure the Court of the adequacy of the representation of the class to be represented, and raises questions both as to the plaintiff's role and role of his counsel." *Rogosin* v. *Steadman*, 71 F.R.D. 514, 519 (S.D.N.Y. 1976). To meet the adequacy requirement of Rule 23.1, Garber must have demonstrated to the Court that he has "an intent and desire to vigorously prosecute the underlying corporate claim" and has "engaged competent counsel to assist in that endeavor." *Sweet*, 65 F.R.D. at 554 (internal citations omitted); *see also Zamer* v. *Diliddo*, No. 97-CV-32S, 1999 WL 606731, at *3 (W.D.N.Y. 1999); *Cohen* v. *Bloch*, 507 F. Supp. 321, 324 (S.D.N.Y. 1980). He has not.

**A.      Garber Has Not Shown the Requisite Intent or Desire To Prosecute Vigorously the Underlying Corporate Claim.**

Courts consider the following factors, among others, when evaluating a plaintiff under Rule 23.1: (i) indications that the plaintiff is not the true party in interest; (ii) the degree of control exercised by the attorneys over the litigation; (iii) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (iv) the lack of any personal commitment to the action on the part of the representative plaintiff; and (v) the degree of support received by the plaintiff from other shareholders. *Rothenberg* v. *Security Mgmt. Co., Inc.*, 667 F.2d 958, 961 (11th Cir. 1982); *see also Davis* v. *Comed*, 619 F.2d 588, 593-94 (6th Cir. 1980); *In re Fuqua Indus. S'holder Litig.*, 752 A.2d 126, 130 (Del. Ch. 1999); *Zamer*, No. 97-CV-32S, 1999 WL 606371 at *3; *Renz* v. *Carota*, No. 87-CV-487, 1991 WL 165677, at *3 (N.D.N.Y. 1991). Garber is plainly deficient under any analysis of his control, familiarity and commitment.[7]

**1.      Yates and Counsel Control This Litigation — Not Garber.**

Garber has failed to exercise any oversight of his lawsuit, but rather has allowed Yates, Robbins Umeda and Lasky & Rifkind to maintain unfettered control since even before the litigation's inception. He is, bluntly, "a puppet for others, neither instigating the action, nor having interest in or awareness of its basis." *Rogosin*, 71

---

[7]     There are also unanswered questions as to whom is the true party in interest in this case. Is it Yates? Is it Robbins Umeda, creator of the much filed complaint? The fact that Garber has been unable to clear up these issues for the Court, defendants and the shareholders whose interests he purports to represent by now should be disqualifying. Nor has there been much "support" shown from other shareholders. While filed four times, there has only been one complaint in this counsel orchestrated litigation, and the only other shareholder that has appeared — Shroff — sought to dismiss his case as soon as he understood the nature of it.

F.R.D. at 516; *see also In re Fuqua Indus. S'holder Litig.*, 752 A.2d at 133 (noting concern with "allegation[s] that attorneys bring actions through puppet plaintiffs while the real parties in interest are the attorneys . . . in search of fees"). Where, as here, a derivative plaintiff does not initiate or participate in the filing of the complaint, but rather allows the litigation to be initiated and maintained according to the "will and desires" of a third party who does not consult with the plaintiff or explain matters regarding the lawsuit, the case should be dismissed. *Rogosin*, 71 F.R.D. at 518-19 (litigation controlled not by plaintiff but by her husband).

Garber has abdicated his responsibilities. He has entrusted leadership and management to Yates, a non-party who answers not to the Court, to defendants or to the shareholders.[8] He allows counsel to draft and submit documents to the Court without ever seeking his input or explaining to him the purpose of their actions. (*See, e.g.,* Garber Tr. 92:17-22; 107:25-108:14; 108:24-109:8.) Handing over such "unbridled discretion . . . to investigate and pursue the derivative suit" is not only improper, *Rothenberg*, 667 F.2d at 963, it is antithetical to the nature of a derivative lawsuit. JPMorgan Chase and its shareholders are entitled to rely on the representative plaintiff to uphold their interests and vindicate the corporate claim, not an invisible and unaccountable non-party.

Garber stated at his deposition:

> In this instance obviously I am alleging that there has been self-dealing, misrepresentations, and that this caused serious financial harm to the company, as well as that they have profited from what I believe to be insider trading.

---

[8] Had it not been for the Court's inquiry and Order requiring that Garber be deposed, the existence of Yates would have remained hidden from the Court, defendants and shareholders.

> And the mechanism to call them to task and to enforce our
> rights is for a shareholder such as myself to step forward in
> a derivative action and make them be held accountable.
> (Garber Tr. 8:13-22.)

Garber, however, fails to live up to his own ideal. He has not stepped forward; he has stepped back. Rule 23.1 demands more.

### 2. Garber Is Neither Familiar With This Litigation Nor Personally Committed to It.

Although a plaintiff need not "have a precise understanding of every fact and legal issue in a derivative suit," he should have initiated the filing of the suit and have "personal knowledge . . . of the factual basis of the complaint."[9] *Rothenberg*, 667 F.2d at 962-63 (derivative suit dismissed where plaintiff admitted that she had no personal knowledge of a significant portion of the complaint and that "[a]ny familiarity with the facts or allegations in the complaint that she did have derived largely from conversations with her attorney"). Garber falls far short.

Garber is a professional plaintiff who has shown an utter lack of personal commitment to the twenty-five litigations in which he has been a plaintiff. Despite the ideals he espouses (Garber Tr. 8:8-22), Garber does no actual work with respect to these litigations and does not familiarize himself with the details of his cases. Indeed, he is unable to identify the location or nature of any of these actions. (Garber Tr. 60:20-67:2.) Garber did not instigate the filing of the instant action (Garber Tr. 9:13-10:6; 29:18-30:9),

---

[9] A plaintiff's unfamiliarity with the specifics of a litigation alone may not render him inadequate under Rule 23.1. *See In re Fuqua Indus. S'holder Litig.*, 752 A.2d at 134 (plaintiffs' lack of specific knowledge regarding the litigation without evidence of a conflict of interest or inadequate legal counsel did not render them inadequate). Here, however, Garber is more than merely unfamiliar with the specifics of this litigation.

and did not participate in the drafting of his complaint or in any underlying investigation of the allegations therein. (Garber Tr. 10:14-22; 35:16-36:2.) Garber verified his complaint based solely on information obtained from counsel through Yates. (Garber Tr. 36:25-37:14.)

Garber has not paid attention to this litigation since then. He was not contemporaneously aware of: (i) the identical derivative action filed by his counsel on behalf of another shareholder on the same day that his complaint was filed; (ii) why that additional derivative action was filed; (iii) the circumstances of Shroff's exit from this litigation; or (iv) the Court's concerns regarding the adequacy of Garber as representative plaintiff and Robbins Umeda as lead counsel. (Garber Tr. 39:18-40:25; 92:17-22; 93:6-18; 107:25-108:14; 108:24-109:8.) Garber never even met his counsel of record until the day before his Court-ordered deposition, almost six months after the complaint was filed. It is the job of Garber (not his friend or counsel) to control and direct the litigation; it is the job of Garber to be knowledgeable of and responsive to the developments in the litigation. Garber has not done his job.

**B.     Garber Has Not Chosen Competent Counsel To Wage This Litigation.**

Assessment of the adequacy of a plaintiff to maintain a derivative action also requires scrutiny of plaintiff's choice of counsel. *Zamer*, No. 97-CV-32S, 1999 WL 606371 at *3; *Spira* v. *Nick*, No. 94 Civ. 7066, 1997 WL 793052, at *3 (S.D.N.Y. 1997) (dismissing action where counsel inadequate); *cf. Kamen* v. *Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1349 (7th Cir. 1990) (derivative plaintiff was adequate despite her lack of knowledge about the case, because the "counsel to whom Kamen entrusted the litigation

— perhaps more accurately, who found Kamen to wage the litigation — is a specialist in the field").

Here, of course, Garber did not actually choose his counsel in the first instance. Yates did. Moreover, and in any event, Garber's counsel have not distinguished themselves. They have played musical chairs with respect to case appearances. The have proved themselves unable or unwilling to establish their adequacy. When faced with scrutiny, they have withdrawn from the case, characterizing their participation as having led to "unfortunate distractions in the litigation," (July 15, 2008 Letter from George C. Aguilar, Esq. to the Honorable Denise L. Cote at 1), and orchestrated the engagement of replacement counsel to facilitate their departure. Arrival of new counsel now cannot save the day. Rule 23.1 requires the appearance of fairness and adequacy from the start. There has been no appearance of fairness and adequacy here and Garber has given the Court no reason to give him a second chance now.

## CONCLUSION

For the foregoing reasons, plaintiff Robert L. Garber is not a fair and adequate representative for JPMorgan Chase and its shareholders in this litigation. Thus, this derivative action may not be maintained under Rule 23.1 of the Federal Rules of Civil Procedure and should be dismissed.

Dated: New York, New York
August 15, 2008

Respectfully submitted,

/s/ Sharon L. Nelles
Sharon L. Nelles (SN-3144)
Gerald L. Black, Jr. (GB-7998)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Tel: (212) 558-4000
Fax: (212) 558-3588

*Attorneys for Defendants*